*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 21, 2016                    520792
_____

IVORY DEVELOPMENT, LLC, et al.,
                    Appellants,
        v                                    MEMORANDUM AND ORDER

DUANE B. ROE JR. et al.,
                    Respondents.
_____

Calendar Date:  November 19, 2015

Before:  Peters, P.J., Lahtinen, Garry, Rose and Clark, JJ.

                    _____


        Joseph J. Haspel, Goshen, for appellants.

        Stoloff & Silver, LLP, Monticello (Richard A. Stoloff of
counsel), for respondents.


                    _____


Garry, J.

        Appeal from an order of the Supreme Court (McGuire, J.),
entered October 30, 2014 in Sullivan County, which, among other
things, partially granted defendants' motion for partial summary
judgment dismissing the complaint.

        In May 2006, defendant Duane B. Roe Jr. and plaintiff
Sullivan Farms II, Inc. (hereinafter SFII) — a company then owned
by Roe — entered into a retention agreement with plaintiff
Raymond Farms Plus, LLC by which Raymond retained Roe and SFII to
purchase and develop certain parcels of real property.  The
agreement provided, among other things, that Roe would be
compensated by certain payments scheduled to be made upon
signing, then at the closing of each real estate purchase, and
finally upon the completion of Roe's contractual obligations.
Thereafter, as pertinent here, SFII purchased two properties,

referred to by the parties as the Truex and Kaufman parcels. Additionally, defendant Sullivan Farms, Inc. (hereinafter SF) — another company owned by Roe — entered into a contract to purchase another parcel of property, and, in June 2007, assigned that real estate contract to plaintiff Seven Peaks, LLC. The assignment agreement required Seven Peaks to convey part of the property back to SF upon closing and imposed certain contractual obligations on SF. SF assigned its rights under this agreement to Freeman Properties, Inc. Part of the property was conveyed to Freeman and part to Seven Peaks; SF's contractual obligations were allegedly not fulfilled.

In February 2008, the parties signed an amended retention agreement that, among other things, acknowledged that Roe had received certain payments and reduced the amount of the final payment due to him upon completion of his contractual obligations. Roe did not complete all of these obligations before the agreement's scheduled termination date, and the agreement was not renewed.

In March 2010, plaintiffs, which are business entities under common management, commenced this action against defendants and Freeman alleging, among other things, breach of contract.[1] Plaintiffs thereafter filed an amended complaint that did not include Freeman as a named defendant. Following joinder of issue and partial discovery, defendants moved pursuant to CPLR 3211 and 3212 for dismissal of the amended complaint's first and second causes of action, which sought recovery of certain sums paid to Roe, as well as the 12th through 15th causes of action, which sought injunctive relief and damages related to the Seven Peaks transaction. Plaintiffs opposed the motion and cross-moved for leave to amend the caption to add Freeman as a defendant.

---

[1]  Although SFII was owned by Roe in 2006, plaintiff Ivory Development, LLC, acquired ownership of the company in 2008. The record fails to clearly reveal the notably complex relationships among the multiple business entities that Roe and plaintiffs' principals owned, used, and sometimes transferred among themselves for the purpose of acquiring, developing and selling real estate.

Supreme Court denied the cross motion and partially granted defendants' motion, by dismissing the first cause of action on CPLR 3211 grounds and granting summary judgment dismissing the second cause of action. The court further dismissed the 12th through 15th causes of action against defendants for failure to state a cause of action, and against Freeman, without prejudice, on the ground that Freeman was not a party. Plaintiffs appeal.

Turning first to the claims related to payments to Roe, the first cause of action alleged, as pertinent here, that certain sums paid to Roe upon the closings of the Truex and Kaufman purchases were not due to him at that time, but instead were interim advances against future earnings — that is, against the final payment that was not to become due until after completion of all of Roe's contractual obligations. Plaintiffs alleged that as Roe never completed these obligations, the Truex and Kaufman payments were unearned and should be returned to them. In dismissing this cause of action, Supreme Court found that the amended complaint failed to allege that plaintiffs had made the payments. The court concluded that plaintiffs lacked standing to recover funds that they had not paid and, further, that there was no cause of action for recovery of such payments.

We find that plaintiffs' first cause of action should not have been dismissed on this ground. A plaintiff may submit affidavits in opposition to a CPLR 3211 motion to rectify defects in an inartfully pleaded complaint, and such affidavits must be "given their most favorable intendment" (Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998] [internal quotation marks and citation omitted]). Here, one of plaintiffs' principals submitted an opposing affidavit alleging that the payments to Roe were made by a nonparty operating entity used by plaintiffs to manage their real estate holdings, known as Black Creek Construction, LLC, and that Black Creek had made the payments at plaintiffs' direction, using plaintiffs' funds and acting in accord with the retention agreement. Although a corporation does not generally have standing to exercise the legal rights of another corporation, even when the entities are affiliated through their ownership or management (see Lyman Rice, Inc. v Albion Mobile Homes, Inc., 89 AD3d 1488, 1489 [2011]; Alexander & Alexander of N.Y. v Fritzen, 114 AD2d 814, 815 [1985], affd 68 NY2d 968 [1985]), a principal

may sue on claims arising from actions taken by its agent (see First Natl. Bank of Md. v Fancy, 244 AD2d 179, 179 [1997], lv denied 92 NY2d 803 [1998]; see generally 24 NY Jur 2d, Agency and Independent Contractors § 323). Plaintiffs' affidavit, in effect, alleged that Black Creek acted as plaintiffs' agent in making the payments to Roe. Thus, plaintiffs' first cause of action should not have been dismissed on CPLR 3211 grounds.

Nonetheless, we find upon review that defendants proved their right to relief as a matter of law pursuant to CPLR 3212, by revealing that plaintiffs have no contractual right to recover the Truex and Kaufman payments. Initially, defendants demonstrated that the Kaufman transaction was not covered by the retention agreement, as shown by a schedule enumerating the real estate transactions to be governed thereby. The retention agreement provided that additional properties could be added to the list by agreement, but also required any contractual modifications to be made in writing. The parties modified the retention agreement by executing the amended agreement after the Kaufman transaction had occurred. The amended agreement not only failed to add the Kaufman transaction to the schedule of covered properties, but further provided that no modifications other than those enumerated had been made.[2] Additionally, defendants submitted an interrogatory response submitted by plaintiffs several years after executing the amended agreement in which they provided a list of "the only [parcels] acquired" pursuant to the retention agreement; this list did not include the Kaufman property. Plaintiffs failed to submit admissible evidence to rebut this proof and reveal factual issues. Plaintiffs argued that the Kaufman transaction was omitted from the list of covered properties in error, but provided no proof of mutual mistake. A unilateral mistake provides grounds for reformation of a contract only when coupled with fraud (see Timber Rattlesnake, LLC v Devine, 117 AD3d 1291, 1292 [2014], lv denied 24 NY3d 904 [2014]), and here plaintiffs made no such allegations.

---

[2] The amended agreement references the Kaufman purchase in a different section of the contract.

In the second cause of action, plaintiffs alleged that a $250,000 payment made to Roe when the retention agreement was signed was an unearned advance against the final payment. Supreme Court granted summary judgment dismissing the second cause of action on the ground that nothing in the parties' submissions could be construed to support plaintiffs' theory that the parties intended to require Roe to return this payment if he failed to earn the final payment. We agree with this conclusion. Even when an employment agreement provides that interim payments will be made as advances against sums that have not yet been earned, no recovery is available for the excess of such payments over amounts ultimately earned "in the absence of an agreement, express or implied, by the agent or employee to repay such excess" (Regent Fin. Group, LLC v Bedian, 97 AD3d 1116, 1117 [2012] [internal quotation marks and citations omitted]; see Centerbank Mtge. Co. v Shapiro, 237 AD2d 477, 477 [1997]). Here, nothing in the retention agreement provides for interim payments against the final obligation, nor can anything in that agreement or the amended agreement be construed to create an obligation on Roe's part to return such payments. None of the listed payments to Roe are described as loans or unearned advances. The amended agreement provides that the $250,000 payment was made "in partial satisfaction" of plaintiffs' obligations to Roe and includes no language suggesting that the payment had not yet been earned. This analysis applies with equal force to the claim asserted in the first cause of action for return of the Truex payment. Had the parties intended to identify either the Truex or the $250,000 payments as a loan or to condition Roe's retention of these payments on his ultimate completion of all of his obligations, they could have included language revealing this intent. They did not do so, and "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Reiss v Financial Performance Corp., 97 NY2d 195, 199 [2001] [internal quotation marks and citation omitted]).

No issue of fact is created by the affidavit testimony of one of plaintiffs' principals that the parties understood the Truex and $250,000 payments to be interim advances that had not yet been earned. Significantly, the affidavit makes no claim that the parties agreed that Roe would return such advances, and

even if it did, parol evidence may not be considered to create an ambiguity where, as here, "a written agreement is complete, clear and unambiguous on its face" (Wiggins v Kopko, 94 AD3d 1268, 1269 [2012]; accord Bank of Am., N.A. v Lang Indus., Inc., 127 AD3d 1457, 1458 [2015]).  Thus, defendants demonstrated their entitlement to partial summary judgment, and the first and second causes of action were properly dismissed.

Turning to the Seven Peaks transaction, the 12th through 15th causes of action seek injunctive relief and damages on the ground that Freeman failed to comply with certain contractual obligations imposed upon SF in its assignment agreement with Seven Peaks.[3]  Although these causes of action concern Freeman's conduct, the caption of the amended complaint does not name Freeman as a party, and a paragraph in the original complaint that had identified Freeman as a defendant was deleted from the amended version.  In their cross motion, plaintiffs asserted that Freeman was omitted in error, but Supreme Court refused to permit them to amend the caption, and declined to address the merits of defendants' motion seeking dismissal of the causes of action against Freeman.  The record reveals, however, that Freeman, along with the other defendants, appeared and answered the amended complaint.  Freeman had been named as a defendant in the original complaint and was properly joined as a party at that time, and nothing in the record reveals that plaintiffs subsequently expressed any intent to discontinue their claims against it, although they had stipulated to withdraw certain claims against other entities shortly before filing the amended complaint.  Additionally, the 12th through 15th causes of action seek relief based solely upon Freeman's actions and make no claims related to any other defendant.  "At any stage of an action, . . . [a] court may permit a mistake, omission, defect or irregularity . . . to be corrected, upon such terms as may be just" (CPLR 2001; see CPLR 1001 [b]; 3025 [b]).  Here, given all

---

[3]  Plaintiffs' brief includes no challenge to Supreme Court's dismissal of their claims against SF in the 12th through 15th causes of action.  We thus deem any related issues to be abandoned (see Devine Real Estate, Inc. v Brennan, 42 AD3d 646, 648 n [2007]).

the circumstances and the absence of prejudice, we find that plaintiffs should have been permitted to amend the caption to add Freeman as a defendant (see Danise v Agway Energy Prods., 255 AD2d 731, 732 [1998]; compare Matter of Tagliaferri v Weiler, 1 NY3d 605, 606 [2004]; Tomlinson Bros. v State of New York, 15 AD2d 692, 693 [1962]).

However, turning to the merits of the parties' claims, we find that defendants' motion for partial summary judgment dismissing the 12th through 15th causes of action against Freeman should be granted. It is well settled that an "'assignee of rights under a bilateral contract is not obligated to perform the duties under the contract unless he [or she] expressly assumes to do so'" (Johnson v Nisbet, 68 AD3d 1333, 1337 [2009], lv denied 14 NY3d 704 [2010], quoting Todd v Krolick, 96 AD2d 695, 695 [1983], affd 62 NY2d 836 [1984]). Roe testified by affidavit that he was the president of both SF and Freeman when the assignment took place, that Freeman did not agree to assume SF's obligations, and that it was under no obligation to Seven Peaks to do so. No assignment agreement between SF and Freeman is in the record, but the assignment agreement between Seven Peaks and SF partially bears out Roe's assertions; this agreement provided that SF was free to assign its rights to Roe or to any entity in which Roe owned at least a 51% interest, but contained no requirement that any such assignee must agree to assume SF's obligations. In response, plaintiffs submitted no evidence controverting defendants' assertions other than the affidavit of their principal, who asserted that it would "defy logic" to construe Seven Peaks' agreement with SF in any way other than to require any assignee to assume SF's obligations under the contract. This unsupported contention failed to establish issues of fact.

Plaintiffs argue that there are triable issues of fact as to whether Freeman is liable for SF's obligations as a successor corporation, which may be held responsible for its predecessor's obligations in the absence of an assumption agreement when, as pertinent here, "there was a consolidation or merger of seller and purchaser [or] . . . the purchasing corporation was a mere continuation of the selling corporation" (Schumacher v Richards

Shear Co., 59 NY2d 239, 245 [1983]).[4]  These exceptions to the general rule are premised upon the concept that "a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased" (Grant-Howard Assoc. v General Housewares Corp., 63 NY2d 291, 296 [1984] [emphasis added]).  The "mere continuation" exception does not apply as the undisputed evidence establishes that SF was not "fully extinguished" by the assignment to Freeman, but instead continued to exist as a separate entity and remained active for several years thereafter (State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d 1575, 1577 [2012]; see Schumacher v Richards Shear Co., 59 NY2d at 245).

As for whether a de facto merger took place, relevant factors "include whether there was any continuity of ownership, management, personnel, physical location, assets or general business operations" (Rosplock v Upstate Mgt. Assoc., Inc., 108 AD3d 825, 827 [2013]; see State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d at 1578-1579).  Here, there was continuity of management and ownership, as Roe was an officer and owner of both SF and Freeman.  Plaintiffs failed, however, to establish the existence of any other factors indicating a de facto merger.  SF was not legally dissolved until several years after the Seven Peaks contract was assigned to Freeman.  While legal dissolution is not a prerequisite for a finding of de facto merger, SF did not become "a mere 'shell' whose legal existence may be disregarded" following the assignment (Matter of New York City Asbestos Litig., 15 AD3d 254, 258 [2005]; see Fitzgerald v Fahnestock & Co., 286 AD2d 573, 575 [2001]).  Instead, SF, which had been formed in 2004 for the purpose of buying and selling real estate, continued to own and sell real property after the

_____

[4]  A successor corporation may also be held liable for its predecessor's obligations when "the transaction is entered into fraudulently to escape such obligations" (Schumacher v Richards Shear Co., 59 NY2d at 245), but that exception is inapplicable here.  Plaintiffs stipulated with defendants to withdraw any fraud claims, and the amended complaint includes no fraud allegations.

2007 assignment; defendants submitted deeds and tax records indicating that real property taxes were assessed against SF in 2008, 2009 and 2010 and that SF conveyed seven properties to various buyers in the three years following the assignment. Under these circumstances, Roe's mere common ownership and management of the two entities is insufficient to establish the existence of issues of fact as to a de facto merger (compare State Farm Fire & Cas. Co. v Main Bros. Oil Co., 101 AD3d at 1578-1579; Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp., 22 AD3d 750, 752-753 [2005]).

We reject plaintiffs' contention that partial summary judgment on the 12th through 15th causes of action is premature in that the parties have not yet conducted depositions. A party who opposes summary judgment on the ground that the moving party has exclusive knowledge and possession of pertinent facts that can be revealed through further discovery "must make an evidentiary showing to support that conclusion" (2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1395-1396 [2009], lv denied 14 NY3d 706 [2010]; accord Bailey v Dimick, 129 AD3d 1165, 1166 [2015]; see CPLR 3212 [f]). Here, plaintiffs' speculative contentions identified no material information that might be gained through depositions that is not already available from the written discovery that has taken place and the affidavits and other documents in this record (see Millington v Kenny & Dittrich Amherst, LLC, 124 AD3d 1108, 1109 [2015]; Ullmannglass v Oneida, Ltd., 121 AD3d 1371, 1373 [2014]; compare Wensing v Paris Indus.-N.Y., 158 AD2d 164, 167 [1990]).

Peters, P.J., Lahtinen, Rose and Clark, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied plaintiffs' cross motion to amend the caption to add Freeman Properties, Inc. as a defendant, and (2) dismissed the 12th, 13th, 14th and 15th causes of action against Freeman without prejudice to renewal in the event that Freeman became a defendant; cross motion to amend the caption granted and partial summary judgment dismissing the 12th, 13th, 14th and 15th causes of action against Freeman granted; and, as so modified, affirmed.


                        ENTER:


                        Robert D. Mayberger
                        Clerk of the Court